IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

```
                                       FILED: SEPTEMBER 3, 2008
UNITED STATES OF AMERICA,         )    08CV4997
                                  )    JUDGE GOTTSCHALL
              Plaintiff,          )    MAGISTRATE JUDGE MASON
                                  )
      v.                          )    Civil No. 08-cv-_____
                                  )  PH
                                  )
DEBRA D. WINDHAM, d/b/a           )
SPECIAL CIRCUMSTANCES, INC.,      )
                                  )
              Defendant.          )
```

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**

Plaintiff the United States of America ("United States"), for its Complaint against Defendant Debra D. Windham, doing business as Special Circumstances, Inc., states as follows:

**Nature of Action**

1. The United States brings this complaint pursuant to 26 U.S.C. ("I.R.C." or "Code") §§ 7402, 7407, and 7408 to enjoin Debra D. Windham, individually or doing business as Special Circumstances, Inc. ("Special Circumstances"), or through any other entity, and any other persons in active concert or participation with her, from preparing or assisting in the preparation of federal tax returns for others, directly or indirectly engaging in conduct subject to penalty under I.R.C. §§ 6694, 6695, and 6701, and from engaging in conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

**Jurisdiction and Venue**

2. This action has been requested by a delegate of the Secretary of Treasury and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to I.R.C. §§ 7402, 7407, and 7408.

3. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345, and I.R.C. §§ 7401, 7402(a), and 7407. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and I.R.C. § 7407(a) because the defendant resides in this judicial district, and because a substantial part of the actions giving rise to this suit took place in this district.

**Defendants**

4. Windham is a resident of Chicago, Illinois, and conducts business in the Chicago area. Notably, before Windham began preparing tax returns as a profit-earning business, she worked as a secretary at the Internal Revenue Service's ("IRS") Criminal Investigation Division's offices in Chicago.

5. Special Circumstances is the business name used by Windham in preparing tax returns for customers. Its stated address is 9717 South Green Street, Chicago, Illinois 60643 - which also happens to be Windham's home address - and it has the EIN number of 02-0591307. Special Circumstances has no employees.

**Windham's Tax Return Business**

6. Windham is an unenrolled tax return preparer. Although she has prepared tax returns for family and friends for many years, she only started charging for her preparation services in 1998. For tax year 2004 (the 2005 filing season), Windham began preparing returns under the business name "Special Circumstances," utilizing the associated EIN on her customers' tax returns, but that name was merely a formality; Windham conducted all tax preparation services provided through Special Circumstances from her home, and employed no one but herself.

7. As described in greater detail below, there were two intertwined components to Windham's scheme. First, Windham repeatedly falsified expenses and deductions on the tax returns

prepared for her customers. Second, she used the falsified returns to apply for Refund Anticipation Loans ("RALs") from a financial lending entity (primarily HSBC Bank). She would use part of the proceeds of the RAL to pay herself and/or Special Circumstances an extra fee for her tax preparation services, with the remainder of the RAL proceeds going to her customers as their "refund." In addition, she repeatedly prepared two sets of returns for many of her customers - one that she would provide to the customer, while electronically filing with the IRS a second, different version. The filed version of the return would claim significantly larger deductions than the first, resulting in an even larger refund (and, correspondingly, a larger second preparation fee for Windham).

8. Through this scheme, Windham was compensated twice for her return preparation services: directly by her customers when she prepared the return, and later, when she received the RAL-related fee. Some of Windham's customers only learned that the deductions found in their filed tax returns were false or inflated after the IRS reviewed the returns with them. Windham's customers frequently had no idea that Windham had even applied for an RAL on their behalf. And many of Windham's customers were surprised to discover that Windham had filed a different copy of the return they had been given - one that claimed even larger deductions than their copy indicated.

**IRS Examination of Returns Prepared by Windham**

9. After becoming aware of unjustified deductions on multiple returns prepared by Windham, the IRS examined income tax returns prepared by Windham for tax years 2003, 2004, and 2005.

10. Specifically, the IRS examined 53 returns belonging to thirty-four taxpayers (some of whose returns were audited for multiple years). In addition to finding evidence that Windham had inflated deductions without the knowledge of her customers, the IRS examination revealed

substantial tax deficiencies for Windham's customers. Adjustments were necessary with respect to deductions set forth on Schedule A, Schedule C, and Schedule E of the examined returns.

11. The effects of Windham's false and fraudulent tax preparation scheme with respect to the examined returns for tax years 2003-2005 have been quantified as follows:

|  | 2005 | 2004 | 2003 | Total |
|---|---|---|---|---|
| Total Examined Returns | 34 | 18 | 1 | 53 |
| Examined Returns With No Changes In Tax | 1 | 0 | 0 | 1 |
| Examined Returns With Changes In Tax | 33 | 18 | 1 | 52 |
| Error Rate (incorrect examined returns) | 97.06% | 100.00% | 100.00% | N/A |
| Tax Deficiencies From The Returns With Tax Changes | $142,793 | $89,793 | $1,350 | $233,936 |
| Average Deficiency Per Changed (Tax) Return | $4,327 | $4,989 | $1,350 | N/A |
| Income Tax Returns (Form 1040) Prepared by Windham | 104 | 77 | 21 | 202 |
| **Projected Tax Loss** (returns prepared x error rate x deficiency per return) | $436,779 | $384,115 | $28,350 | $849,243 |

12. In addition, out of the 53 returns examined in its audit, the IRS obtained copies of 25 of the versions of the returns that Windham had provided to her customers. The IRS was thus able to do a side-by-side comparison of some of the filed returns in its possession with the copies of the returns given by Windham to her customers.

13. Among those 25 customer-held returns compared, 21 (or eighty-four percent (84%)) clearly had been modified by Windham, given that the parallel copies filed with the IRS for the same customers set forth substantially more deductions, and thus sought larger refunds, than the copies possessed by her customers. Indeed, the average difference in refunds claimed on the customer-held returns, versus the actually filed returns, was $988 per return.

**Examples of Windham's Malfeasance**

14. Windham prepared 21, 77, 104, and 74 returns during the years 2004, 2005, 2006, and 2007, respectively. The centerpiece of Windham's multiple-return and RAL fee scheme was the consistent manufacture and/or falsification of expenses and deductions on Schedule A, Schedule C, and Schedule E of the returns she prepared.

15. In the course of reviewing tax returns prepared by Windham, the IRS interviewed a number of Windham's customers to learn more about her course of misconduct. The following specific instances of false and fraudulent conduct were detailed:

- one customer, Kenyatta Ward, stated that she had not received a copy of the Schedule A included in the copy of her return filed with the IRS, and otherwise did not know and had not been told the basis for the deductions set forth on the schedule. She also observed that the refund amount from the filed return exceeded what she had actually received, and attempted unsuccessfully to get Windham to explain why this was the case;

- another customer, Crandon Singleton, paid Windham to prepare his tax returns for fiscal years 2004 and 2005. The tax return prepared by Windham for 2004 and filed with the IRS included a deduction for alleged unreimbursed training expenses that the taxpayer's employer had required him to incur. In fact the costs were illusory, because the training in question was provided to employees free of charge. Moreover, the claimed training expenses had been documented to the IRS with the forged signature of a supervisor at the individual's employer who had not worked there for several years. In addition, the filed return for 2004 claimed a deduction for a church donation of $9,975 in cash - an illusory donation to a church to which the taxpayer did not even belong; and

- For Sheila and Michael Helton's 2005 return, Windham set forth deductions for charitable contributions and medical expenses in their return that they had not in fact incurred, or authorized Windham to claim for them.

**Application for RALs Using the Inflated Returns**

16. Windham charged her customers an up-front fee for the return preparation services she provided. This preparation fee (which was typically calculated by the tax preparation software she

used) was often nominal; for example, she charged only $65 for a basic electronically-filed return. She also had to pay a third party to actually perform the electronic filing function[1] and incurred costs from the use of the tax software program she utilized in preparing returns. The RAL scheme accordingly allowed Windham to increase her profits from tax preparation - unbeknownst to her customers.

17. Under this scheme, Windham applied for RALs for her customers through HSBC. The RALs permitted Windham's customers to obtain tax refunds earlier than they would have if they had waited for the IRS to issue them, by essentially borrowing the sum in advance from a lender (which charged a fee for the loan). In most cases, if not all, Windham did not inform her customers in advance that she had applied for a RAL on their behalf.

18. The RAL applications included a place to specify a "tax preparation fee," which Windham directed should be paid to her. This fee was significantly larger than the up-front fees customers had originally paid Windham to prepare their tax returns; the average preparation fee obtained by Windham from the RALs was approximately $783. In effect, Windham's RAL scheme captured part of the refund claimed for her customers. The remainder of the RAL proceeds would go to Windham's customers after the fee had been taken out.

19. The existence of this extra fee was not disclosed to Windham's customers, as it was based upon Windham's application for the RALs without the prior knowledge or approval of the

---

1. The entity that performed this task for Windham was Joseph Financial Services ("Joseph Financial"), a business located in Blue Island, Illinois. Because Windham never applied for her own EFIN with the IRS, she entered into an arrangement with Joseph Financial, beginning in 2004, to utilize its EFIN to electronically file tax returns. Joseph Financial charged her a $55 fee for this service, which she passed on to her customers. Windham's relationship with Joseph Financial was not strictly limited to using it for electronic return filings, however. One of Joseph Financial's principals, Greg Holcomb, is himself a tax preparer who previously taught a class in tax preparation taken by Windham and for whom Windham has also worked in the past. Joseph Financial provided Windham with the tax software program used to prepare returns. And Windham shared a portion of the additional preparer fee she obtained from the RALs with Joseph Financial.

customers. Indeed, in some instances, Windham's customers informed the IRS that they were surprised not only to learn both that the amount of the expected refund was smaller than Windham had indicated (due to Windham's skimming of the additional preparer fee from the RAL proceeds), but also that the "refund" had not come directly from the IRS (but instead had been wired to them by HSBC).

20. Windham also prepared two sets of returns for many of her customers. She would provide the customer with a copy of one version (which itself contained inflated or false deductions), but then would file a second version that set forth even larger false deductions, using the second version to apply for the RAL. In this manner, Windham was able to increase her preparer fee derived from the RAL even more, while still providing to her customers a refund in the amount they had expected. In the course of the IRS examinations, however, Windham's customers were consistently surprised to learn from the IRS that it had issued a refund even larger than their copy of the return indicated.

**Harm to the Government**

21. While Windham's preparer scheme benefitted her bottom line by increasing her fees, it concurrently harmed the Government by fraudulently reducing her customers' reported tax liabilities and resulting in improper and inflated refunds.

22. The IRS has been harmed by Windham's conduct in particular because it must dedicate scarce resources to detecting and examining inaccurate returns filed by Windham's customers, to conducting resource and time-intensive reviews, and to attempting to collect unpaid taxes.

23. Schemes such as those engaged in by Windham contribute to the under-reporting of taxes. Such return-preparer fraud has been included by the IRS in its "Dirty Dozen" list of tax scams. *See* IR200841 March 13, 2008 (http://www.irs.gov/newsroom/article/0,,id=180075,00.html).

24. Windham's scheme was not isolated but recurred over several years. The error rate merely for the fifty-three reviewed returns approached one-hundred percent. For the 202 returns Windham prepared from 2004 to 2006, the IRS projects a tax loss of nearly $850,000 - and that figure does not take into account returns prepared in 2007.

25. Windham's extensive involvement in these elaborate tax-fraud schemes over the past several years suggests that the misconduct described in this complaint, or other similar misconduct, is likely to recur unless she is permanently enjoined.

**Count I: Injunction under I.R.C. § 7407 for violations of I.R.C. §§ 6694 and 6695**

26. The United States incorporates by reference the allegations contained in paragraphs 1 through 25.

27. I.R.C. Section 7407 authorizes a court to enjoin a person from, among other things,

    a. engaging in conduct subject to penalty under I.R.C. § 6694, which penalizes a return preparer who prepares or submits a return or claim that contains a frivolous or unrealistic position, or who willfully attempts to understate a customer's tax liability on a return or claim, or who makes an understatement on a return due to reckless or intentional disregard of rules or regulations;[2]

    b. engaging in conduct subject to penalty under I.R.C. § 6695, which, among other things, penalizes a return preparer who fails to furnish a copy of the return to a taxpayer; and

    c. engaging in any other fraudulent or deceptive conduct that substantially interferes

---

2. Section 6694 was amended by the Small Business and Work Opportunity Tax Act of 2007, P.L. 110-28, § 8246, effective for returns prepared after May 25, 2007. Section 6694(a), as amended, subjects a tax return preparer to penalty for understatements of taxpayer liability due to an "unreasonable position," defined as a position where "the tax return preparer knew (or reasonably should have known) of the position," there was no "reasonable belief that the position would more likely than not be sustained on its merits," and "the position was not disclosed as provided in section 6662(d)(2)(B)(ii)" or "there was no reasonable basis for the position." Because this suit focuses on returns that Windham prepared prior to May 25, 2007, the government relies only on the penalty standards in effect for returns prepared on or before that date. The government notes, however, that Windham's conduct would be subject to penalty under the amended § 6694(a) standards.

with the proper administration of the internal revenue laws.

28. If the return preparer's misconduct is continual or repeated, and the court finds that a more narrow injunction (*i.e.,* prohibiting specifically enumerated conduct) would be insufficient to prevent the preparer's interference with the proper administration of federal tax laws, the court may permanently enjoin the person from further acting as a return preparer.

29. Windham has continually and repeatedly prepared federal tax returns with inflated, exaggerated, and fictitious deductions. She has also continually and repeatedly submitted returns that willfully understate her customers' tax liability, with knowledge and/or reckless disregard of the rules and regulations with respect to income tax returns. Accordingly, she has engaged in conduct subject to penalty under I.R.C. § 6694.

30. In addition, with respect to many of her customers, Windham failed to furnish to her customers an actual copy of the return she had filed with the IRS. Accordingly, she has engaged in conduct subject to penalty under I.R.C. § 6695.

31. Windham prepared her customers' tax returns with knowledge that she was substantially understating their actual tax liability, based upon claimed deductions that were wholly unfounded or fictitious. As a result, Windham took advantage of taxpayers who were unsophisticated in order to increase her own profits. Given the continual and repeated nature of Windham's violations of these various Tax Code provisions, a more narrow injunction would be inadequate to prevent future violations of the federal tax laws by Windham, and she should therefore be enjoined from acting as a tax return preparer in the future.

**Count II: Injunction under I.R.C. § 7408 for violations of I.R.C. § 6701**

32. The United States incorporates by reference the allegations contained in paragraphs 1 through 31.

33. Section 7408 authorizes a court to enjoin persons who have engaged in conduct subject to penalty under I.R.C. § 6701 from engaging in further such conduct or any other conduct subject to penalty under the Code.

34. Section 6701 penalizes persons who aid, assist in, procure or advise with respect to the preparation of any portion of a return, affidavit, claim or other document, when that person knows or has reason to believe that portion will be used in connection with a material matter arising under the federal tax law, and the person knows that the relevant portion will result in the material understatement of the liability for the tax of another person.

35. Here, Windham continually and repeatedly made false statements on the returns she prepared regarding the deductibility of exaggerated and/or fictitious expenses. She actively generated such inflated deductions and included them in the tax returns she prepared, with knowledge that the deductions were false and/or fraudulent, in order to assist her in obtaining undeserved preparation fees in connection with the RALs she applied for on behalf of her (often unknowing) customers.

36. Windham was also instrumental in preparing tax returns containing false statements of exaggerated expenses, for which she lacked corroborative support or any other reasoned basis to include in them the tax returns she prepared. This resulted in the filing of many false tax returns and the understatement of hundreds of thousands in tax dollars.

37. Windham engaged in the above-described conduct with awareness of the false and improper character of such statements.

38. Windham prepared tax returns, and/or assisted in the preparation of such returns, that were intended to be used, and were used, in connection with material matters arising under the federal tax laws.

39. Unless enjoined by this Court, Windham is likely to continue to prepare tax returns containing false and fraudulent information and deductions, resulting in further understatements of her customers' tax liability.

### Count III: Injunction under I.R.C. § 7402

40. The United States incorporates by reference the allegations contained in paragraphs 1 through 39.

41. Section 7402 authorizes courts to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

42. Windham, through the actions described above, has engaged in conduct that interferes substantially with the administration and enforcement of the internal revenue laws.

43. Windham's conduct results in irreparable harm to the United States for which the United States has no adequate remedy at law. Windham's conduct is causing and will continue to cause substantial revenue losses to the United States Treasury, much of which may be unrecoverable.

44. Unless Windham is enjoined, the IRS will have to continue to devote substantial time and resources to identify and locate her customers, and then construct and examine those persons' tax returns and liabilities. The burden of pursuing individual customers may be an insurmountable obstacle, given the IRS's limited resources.

45. If Windham is not enjoined, she likely will continue to engage in conduct that obstructs and interferes with the enforcement of the internal revenue laws.

**Relief Sought**

WHEREFORE, plaintiff the United States of America respectfully prays for the following:

A.  That the Court find that Windham has continually and repeatedly engaged in conduct subject to penalty under I.R.C. §§ 6694, 6695, and 6701 and that injunctive relief is appropriate under I.R.C. §§ 7407 and 7408 to prevent Windham, and any business or entity through which she operates, and anyone acting in concert with her, from engaging in further such conduct;

B.  That the Court find that Windham has engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief against Windham, and any business or entity through which she operates, including but not limited to Special Circumstances, Inc., and anyone acting in concert with her, is appropriate to prevent the recurrence of that conduct pursuant to the Court's powers under I.R.C. § 7402(a);

C.  That the Court, pursuant to I.R.C. §§ 7402, 7407, and 7408, enter a permanent injunction prohibiting Windham, individually and doing business as Special Circumstances or any other entity, and her representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with her, from directly or indirectly:

(1) Acting as a federal tax return preparer, or requesting, assisting in, or directing the preparation or filing of federal tax returns for any person other than herself, or appearing as a representative on behalf of any person or entity whose tax liability is under examination or investigation by the Internal Revenue Service;

(2) Engaging in any conduct subject to penalty under IRC § 6694;

(3) Engaging in any conduct subject to penalty under IRC § 6695, including failing to furnish her customers a copy of their filed tax returns;

(4) Instructing, assisting, or advising or assisting others to violate the tax laws, including to evade the payment of taxes;

(5) Engaging in conduct subject to penalty under I.R.C. § 6701, *i.e.*, by also aiding, assisting in, procuring, or advising with respect to the preparation of any portion of

       a return, affidavit, claim or other document, when Windham knows or has reason to believe that portion will be used in connection with a material matter arising under the federal tax law, and Windham knows that the relevant portion will result in the material understatement of the liability for the tax of another person;

   (6)    Engaging in any other conduct that interferes with the administration and enforcement of the internal revenue laws; and

   (7)    Engaging in any activity subject to penalty under any other section of the Internal Revenue Code.

    D.  That this Court, pursuant to I.R.C. § 7402, enter an injunction requiring Windham to contact by mail (or by e-mail, if a mailing address is unknown) all persons and entities who have, since January 1, 2003, previously paid or otherwise retained her to prepare their income tax returns, and inform those persons and entities of the Court's findings concerning the falsity of Windham's prior representations and attach a copy of the permanent injunction against Windham, and to file with the Court, within 20 days of the date the permanent injunction is entered, a certification signed under penalty of perjury stating that she has done so;

    E.  That this Court, pursuant to I.R.C. § 7402, enter an injunction requiring Windham to produce to counsel for the United States her (and Special Circumstances, Inc.'s) complete customer list, including the names, addresses, e-mail addresses, telephone numbers, and social security or tax identification numbers, of all persons and entities who have, since January 1, 2003, previously paid or otherwise retained her to prepare their income tax returns, and to file with the Court, within 20 days of the date the permanent injunction is entered, a certification that she has done so;

    F.  That this Court order that the United States is permitted to engage in post-judgment discovery to ensure compliance with the permanent injunction;

    G.  That this Court retain jurisdiction over this action for purposes of implementing and enforcing the final judgment; and

H.  That the Court grant the United States such other and further relief as the Court deems proper.

September 3, 2008

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

/s/ Brian H. Corcoran
BRIAN H. CORCORAN
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Washington, D.C.  20044
Telephone: (202) 202-353-7421
Fax: (202) 514-6770
Brian.H.Corcoran@usdoj.gov

Attorneys for the United States of America